UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARKELLE STARR,

        Plaintiff,

v.

UNITED DEBT HOLDING, LLC,
and CRAIG ALAN MANSETH,

        Defendants.

_____/

## Complaint

**I.    Introduction**

1.    This is an action for damages, brought by a consumer against debt collectors for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and Michigan Collection Practices Act ("MCPA"), M.C.L. § 445.251 *et seq.*

**II.    Jurisdiction**

2.    This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367. Venue in this judicial district is proper because the pertinent events took place here.

**III.    Parties**

3.    Plaintiff Markelle Starr is a natural person residing in Muskegon County, Michigan. Ms. Starr is a "consumer" and "person" as the terms are defined and used in the FDCPA. Ms. Starr is a "consumer," "debtor" and "person" as the terms are defined and used in

the MCPA.

4.     Defendant United Debt Holding, LLC ("UDH") is a Delaware limited liability company. According to documents filed by UDH with various states, UDH claims that its principal place of business is located at 4833 Front Street, Unit B, #243, Castle Rock, Colorado 80104. However, that address is nothing more than a small, private mailbox rented by UDH at The UPS Store, #4337. The true principal place of business of UDH is 11551 East Arapahoe Road, Suite 150, Centennial, Colorado 80112. UDH is owned, managed and operated by defendant Craig Alan Manseth. According to the UDH internet website (www.udhllc.com), UDH "is an industry leader that focuses on locating and acquiring charged-off consumer debt portfolios. . . . UDH specializes in purchasing payday loans. . . . UDH purchases $100's of millions of payday loans on a [*sic*] annual basis . . . ." UDH uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. UDH is a "debt collector" as the term is defined and used in the FDCPA. UDH is a "regulated person" as the term is defined and used in the MCPA.

5.     Defendant Craig Alan Manseth is an individual, purportedly residing at 4433 Tierra Alta Drive, Castle Rock, Colorado 80104. Mr. Manseth's residence is approximately 1.4 miles from the private mailbox rented by UDH at 4833 Front Street, Unit B, #243, Castle Rock, Colorado 80104. Mr. Manseth owns, operates and manages UDH. Mr. Manseth created the collection policies and procedures used by UDH and its employees, manages the daily collection operations of UDH, and oversees the application of the collection policies and procedures used by UDH and its employees. Mr. Manseth uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Manseth is a "debt collector" as the

2

term is defined and/or used in the FDCPA. Mr. Manseth is a a "regulated person" as the term is defined and used in the MCPA.

**IV.    Facts**

6.      In June 2010. Ms. Starr opened an account with Check 'n Go ("CNG") and borrowed money by way of a payday loan. CNG originally designated the account as Account No. 21784003. The account also has been referred to as Account No. 509339 and Account No. 393044. Ms. Starr used the loan to obtain goods and/or services for personal. family or household purposes. Any resulting obligation to pay money was a "debt" as the term is defined and/or used in the FDCPA and MCPA.

7.      Ms. Starr had a dispute with CNG regarding the alleged debt.

8.      Ms. Starr disputed the alleged debt.

9.      Ms. Starr refused to pay the alleged debt.

10.     CNG charged off and sold the account.

11.     In or about September 2010. Defendant UDH purchased the charged-off account.

12.     UDH hired a debt collector named Lighthouse Recovery Associates. LLC ("Lighthouse") and a debt collector named Powell Law Office, P.C. ("Powell") to collect the alleged debt from Ms. Starr. UDH. Lighthouse and Powell all operated from the same place of business at 1551 East Arapahoe Road, Suite 150, Centennial, Colorado 80112.

13.     Between November 2010 and January 2011. Lighthouse and Powell made multiple telephone calls to Ms. Starr and others and repeatedly violated the FDCPA and Michigan law in connection with their efforts to collect the debt for UDH.

14.     On January 19, 2011, Ms. Starr filed a lawsuit against Lighthouse. Powell and

3

others in the United States District Court for the Western District of Michigan, Case No. 1:11-cv-70, alleging that Lighthouse, Powell and others had violated the violated the FDCPA and Michigan law in connection with their efforts to collect the debt for UDH.

15.     On March 4, 2011, Lighthouse, Powell and the other defendants, through counsel, filed their answer in Case No. 1:11-cv-70.

16.     On June 23, 2011, Ms. Starr, Lighthouse, Powell and the other defendants, entered into a settlement agreement in Case No. 1:11-cv-70. The settlement agreement stated, in pertinent part, that the debt in the amount of $701.45 was currently owned by United Debt Holding LLC, a Delaware limited liability company, doing business at 11551 E. Arapahoe Road, Suite 150, Centennial, Colorado 80112, in the amount of $701.45, that the debt was disputed by Ms. Starr, that all efforts to collect the debt would cease, and that the debt would never be sold or transferred to any entity. Attached hereto as Exhibit A are emails from counsel for Lighthouse, Powell and the other defendants, representing that UDH was the owner of account and that UDH was doing business from the same office suite as Lighthouse and Powell.

17.     UDH and Mr. Manseth had knowledge that Ms. Starr had filed Case No. 1:11-cv-70.

18.     UDH and Mr. Manseth had knowledge of the facts alleged by Ms. Starr in Case No. 1:11-cv-70.

19.     UDH and Mr. Manseth had knowledge of the existence of the above-described settlement agreement.

20.     UDH and Mr. Manseth had knowledge of the terms of the above-described settlement agreement.

21.     UDH and Mr. Manseth had knowledge that the debt was disputed by Ms. Starr.

22.     UDH and Mr. Manseth represented that they would cease all efforts to collect the debt

4

and that they would never sell or transfer the debt to any entity.

23.     On September 7, 2011, Case No. 1:11-cv-70 was dismissed with prejudice.

24.     Despite the foregoing, sometime after June 23, 2011, UDH and Mr. Manseth sold the account and related, alleged debt to an entity named Westwood Asset Management, LLC ("Westwood").

25.     The FDCPA states that it is unlawful for a debt collector to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed. 15 U.S.C. § 1692e(8).

26.     UDH and Mr. Manseth sold the account and related, alleged debt to Westwood, but did not communicate to Westwood that the debt was disputed by Ms. Starr, and thereby violated the FDCPA and Michigan law.

27.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt. 15 U.S.C. § 1692e(2)(A).

28.     UDH and Mr. Manseth wrongfully sold the account and related, alleged debt to Westwood, and thereby violated the FDCPA and Michigan law.

29.     UDH and Mr. Manseth sold the account and related, alleged debt to Westwood, made false representations regarding the character, amount and legal status of the alleged debt, and thereby violated the FDCPA and Michigan law.

30.     In April 2012, Westwood made multiple telephone calls to Ms. Starr in connection with efforts to collect the alleged debt. Westwood and its employee left multiple messages for Ms. Starr, falsely stating that a lawsuit had been filed against Ms. Starr to collect the alleged debt, falsely accusing Ms. Starr of various crimes, and demanding payment of a debt not owed.

31.     On or about April 26, 2012, Ms. Starr telephoned UDH and spoke with a UDH

5

employee identified as Lindsay. The UDH employee stated that UDH had sold Account No. 21784003, also known as Account No. 509339, to a third party with a telephone number of 855-844-3537, but that the UDH records available to her did not disclose the name of the purchaser and instead merely indicated the buyer to be "S-O-L."

32.     Ms. Starr later determined that telephone number 855-844-3537 belonged to Westwood.

33.     The defendants and their employees intentionally and wilfully violated the FDCPA and MCPA.

34.     As an actual and proximate result of the acts and omissions of defendants and their employees, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, embarrassment, stress, mental anguish, emotional stress, and suffering for which she should be compensated in an amount to be established by jury and at trial.

**V.     Claims for Relief**

**Count 1– Fair Debt Collection Practices Act**

35.     Plaintiff incorporates the foregoing paragraphs by reference.

36.     Defendants have violated the FDCPA. Defendants' violations of the FDCPA include, but are not necessarily limited to, the following:

a)     Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

b)     Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted

6

collection of a debt; and

c)    Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means

to collect or attempt to collect a debt from plaintiff.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)    Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)    Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)    Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)    Such further relief as the court deems just and proper.

### Count 2– Michigan Collection Practices Act

37.    Plaintiff incorporates the foregoing paragraphs by reference.

38.    Defendants have violated the MCPA.  Defendants' violations of the MCPA

include, but are not necessarily limited to, the following:

a)    Defendants violated M.C.L. § 445.252(e) by making an inaccurate, misleading,

untrue, or deceptive statement or claim in a communication to collect a debt;

b)    Defendants violated M.C.L. § 445.252(f) by misrepresenting in a communication

with a debtor the following: (i) the legal status of a legal action being taken or

threatened; and (ii) the legal rights of a creditor or debtor;

c)    Defendants violated M.C.L. § 445.252(n) by using a harassing, oppressive, or

abusive method to collect a debt; and

d)    Defendants violated M.C.L. § 445.252(q) by failing to implement a procedure

designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendants for:

7

a)      Actual damages pursuant to M.C.L. § 445.257;

b)      Treble the actual damages pursuant to M.C.L. § 445.257;

c)      Statutory damages pursuant to M.C.L. § 445.257;

d)      Equitable relief pursuant to M.C.L. § 445.257; and

e)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2).

### Demand for Trial by Jury

Plaintiff demands trial by jury.

Dated: May 1, 2012

Phillip C. Rogers (P34356)
Attorney for Plaintiff
40 Pearl Street, N.W., Suite 336
Grand Rapids, Michigan 49503-3026
(616) 776-1176
ConsumerLawyer@aol.com